1  Scott Alan Burroughs (SBN 235718)
   scott@donigerlawfirm.com
2  Trevor W. Barrett (SBN 287174)
   tbarrett@donigerlawfirm.com
3  Frank R. Trechsel (SBN 312199)
4  ftrechsel@donigerlawfirm.com
   DONIGER / BURROUGHS
5  603 Rose Avenue
6  Venice, California 90291
7  Telephone: (310) 590-1820

8  Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVN WORLDWIDE, LTD., a Mauritius limited company, <br><br> Plaintiff, <br><br> v. <br><br> OLYMPUSAT HOLDINGS, INC., a Florida corporation; OLYMPUSAT, LLC, a Florida limited liability company; OLYMPUSAT, INC., a Florida corporation; THOMAS MOHLER, an individual; and DOES 1-10, <br><br> Defendants. | Case No.: <br><br> **PLAINTIFF'S COMPLAINT FOR**: <br><br> 1. COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et. seq.*) <br><br> 2. VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT <br><br> 3. BREACH OF CONTRACT <br><br> <u>Jury Trial Demanded</u> |

Plaintiff, LIVN Worldwide Ltd. ("LIVN"), by and through its undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

## INTRODUCTION

1. LIVN has an exclusive license to the 12 Fiction TV Series Shows (the "TV Series Shows") in multiple countries including North America and Europe.

2. In April 2019, LIVN entered a fixed license fee agreement with Ocean New Media LLC, a wholly owned and operated subsidiary of Olympusat Holdings, Inc. and Olympusat, Inc. (collectively, "Olympusat" or "Defendants") which provided Defendants a license for rights to six of the twelve Fiction TV Series Shows in the United States, United States Territories, Canada, and Latin America (the "2019 Agreement"). The 2019 Agreement included a license for the TV Shows titled "Martial Universe", "Nothing Gold Can Stay", "Legend of Hao Lan" and "I Will Never Let You Go."

3. In October 2021, LIVN entered another fixed license fee agreement with Defendants that provided Defendants a license for additional content in the United States, the United States Territories, Canada, and Latin America (the "2021 Agreement" (collectively with the 2019 Agreement, the "Agreements")). The 2021 Agreement included a license for the TV Show titled "The Wolf."

4. The Agreements each provided a license to distribute, advertise and dub seven of the twelve "TV Series Shows" (the "Licensed Series") in specific countries (the "Licensed Territories").

5. On or about April 2023, LIVN discovered that FREETV, was distributing, streaming, and exploiting five of the seven Licensed Series, unauthorized dubbed versions outside the Licensed Territories ("Infringing Uses").

6. Defendants wholly own and operate a web-based streaming service called "FREETV" which provides streaming services to consumers around the World, including within the United States.

///

7. On or about May 5, 2023, in light of Defendants ongoing breach, LIVN exercised its termination rights regarding the Agreements with Defendants and provided written notice of such termination to Defendants.

8. Because LIVN properly exercised its termination rights, the Agreements, and license provided to Defendants, were terminated and LIVN is once again the exclusive owner of the copyrights to the Licensed Series in the Licensed Territory.

9. Defendants continue Infringing Uses throughout the Licensed Territories, despite LIVN's proper termination of the Agreements.

10. Further, Defendants have continued advertising the Licensed Series on their websites outside of the Licensed Territories using LIVN's advertisement materials in attempt to direct consumers to their platform in violation of LIVN's exclusive rights.

11. Upon information and belief, Defendants received master copies of the Licensed Series pursuant to the Agreements. Defendants thereafter exploited such master copies as evidenced by the Infringing Uses.

12. Defendants both failed to respond to the termination notice or cease the Infringing Uses, necessitating this action.

## PARTIES

13. Upon information and belief, Defendant Olympusat Holdings, Inc., is a Florida corporation with headquarters at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida 33401 and wholly owns and operates Olympusat Inc., and Olympusat LLC, both Florida corporations operating out of the same headquarters (collectively with Olympusat Holdings, Inc., "Olympusat"). Olympusat has at least two executive officers stationed in its California offices, and had registered its principal California office at 3375 Barham Boulevard in Los Angeles.

14. Upon information and belief, Olympusat wholly owns, controls, and operates the website "FREETV", which is a global online streaming service. Upon

information and belief, Ocean New Media, LLC is a Florida limited liability company and is wholly owned and controlled by Olympusat.

15. Upon information and belief, Thomas Mohler is an individual domiciled in Florida and is CEO and owner of Olympusat, and President of Ocean New Media, LLC.

## JURISDICTION AND VENUE

16. This action arises under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, *et seq*, and Cal. Civ. Code 3344(a).

17. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 1338 (a) and (b).

18. Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

19. Upon information and belief, Olympusat registered its principal California office at 3375 Barham Boulevard in Los Angeles, and at all relevant times had multiple executive officers stationed within this district.

20. Upon information and belief, Defendants engineering facility is located in California and dubbing, uploading, formatting, and broadcasting related to the infringing activities contained herein took place in the United States and within this District.

21. Upon information and belief, Defendants engage and conduct business within this District by advertising, streaming, and distributing content in this District and engaging in business with California residents and targeting the same.

22. Upon information and belief, Defendants infringing conduct is directed directly towards residents of this District and arises out of conduct occurring in this District.

23. On information and belief, Plaintiff alleges that Defendants DOES 1 through 10, inclusive, are other parties not yet identified who have infringed Plaintiff's

copyrights, have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

24. Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages proximately caused thereby.

## CLAIMS RELATED TO PLAINTIFF'S SUBJECT WORKS
## THE AGREEMENTS

25. LIVN is a Film and Television Production and Distribution company that provides multi-layered distribution services in addition to owning the exclusive rights to the TV Series Shows in multiple countries. The TV Series shows are available to consumers through various Television and streaming platforms to which LIVN licenses Film and Television content.

26. To ensure that LIVN continues to offer competitive and compelling content, LIVN has entered into licensing Agreements with media and management firms, including Defendants allowing for the distribution of a selection of the TV Series Shows in a limited number of countries.

27. The Agreements each provided the same scope of license, which granted Defendants the right to distribute, advertise, dub, and stream seven of the TV Series Shows in specific countries. Outside of the countries licensed in the Agreements,

LIVN remains the exclusive owner of the rights in the Licensed Shows for multiple countries.

28. The Agreement provided Defendants license to distribute, stream, and dub the TV Series Shows in the Licensed Territory which is:

> Licensed Territory: United States, Puerto Rico, United States territories and possessions, Canada, and Latin America. Exh. 1 at 3 ¶ E.

29. Defendants have materially breached the Agreements by distributing, streaming, and exploiting the dubbed versions in both English and Spanish of the Licensed Series outside of the Licensed Territories, specifically, in India, Australia, Europe, and the United Kingdom, Africa ("Infringing Uses").

30. In light of Defendants Infringing Uses, LIVN properly exercised its termination rights in accordance with the terms of the Agreements:

> Default: Termination
> (a) Default: Any one of the following shall constitute an "Event of Default" under this Agreement": (i) Any representation or warranty made by either party that is or becomes false or misleading in any material respect; (ii) if LICENSOR fails to timely deliver any portion of the Program Titles to LICENSEE and fails to cure such failure within thirty (30) days of the missed delivery date; or (iii) if either party defaults in any material respect in the performance of any other obligation, which default remains uncured after a period of 60 days after the non-defaulting party sends written notice of such default to defaulting party. Exh. 1 at 14-15.

31. On May 5, 2023, LIVN provided written notice of its termination of the Agreements to Defendants due to Defendants exploitation of the Licensed TV Series outside the scope of the Agreements, namely, in territories not authorized by the Agreements.

///

32. To date, Defendants have not cured or otherwise stopped the Infringing Uses. Defendants have also continued distributing the Licensed Shows in the Licensed Territories, despite termination of the Agreements.

33. Due to Defendants Infringing Uses distributors of LIVN's content and consumers believe that the Licensed Series were widely available from other services, when, in fact, they should have been only available through LIVN. The most valuable rights to the material i.e. English and Spanish Dubbing Rights have been exploited by Defendants in major countries without authorization. LIVN is now no longer able to either exploit the content either on its own (of note LIVN has signed agreements (in July 2023) with Comcast and Samsung TV Plus to deploy TV Channels and streaming services in European countries). LIVN is now deprived of the ability to **premiere** its own shows on its own channels in the **English Dub** version in lucrative English-speaking markets like the UK, India and Australia. Moreover, LIVN can no longer sell the Exclusive Dub Rights to European or Worldwide broadcasters which in most cases ask for the first-run rights for dub content.

34. Defendants' Infringing Uses has created a perceived lack of exclusivity and devalued LIVN in the eyes of some. Defendants' Infringing Uses have also hampered LIVN's ability to attract and retain subscribers to LIVN's own services. LIVN's exclusive content works as a marketing tool to attract new subscribers. But when a viewer searched online for a Licensed Series to watch in a LIVN-exclusive territory and learned that the TV Series Show was available either on LIVN or a third-party service (when it should have only been available on LIVN) that viewer is encouraged not to subscribe to LIVN but instead to use a competing service. A search for what should have been an exclusive TV Series Show to LIVN, which should have been a boost to LIVN's business, instead caused LIVN to potentially lose customers.

///

///

///

# THE INFRINGEMENT

35. Because LIVN properly exercised its termination rights in the Agreements, Defendants no longer have a license to distribute the Licensed Series in the Licensed Territories.

36. Defendants continue distributing the Licensed Series in the Licensed Territories despite termination of the Agreements and licenses. Such Infringing Uses infringes LIVN's exclusive rights to the Licensed Series in the Licensed Territories.

37. LIVN also owns the exclusive rights to the Licensed Series in Europe and United Kingdom. LIVN also owns the exclusive rights for certain Licensed Series in India, Africa, and Australia.

38. The works are first published overseas within the scope of the Berne Convention. As such, the works at issue are exempt from Section 411(a) of the Copyright Act.

39. Defendants has and continues distributing the dubbed versions of the Licensed Series through its "FREETV" service throughout India, United Kingdom, Europe, Africa, and Australia.

40. LIVN has never authorized Defendants distribution, streaming, or display the Licensed Series throughout India, United Kingdom, Europe, Africa, and Australia. Such conduct infringes LIVN's exclusive rights and is considered Infringing Uses.

41. Content exclusivity is important to LIVN. LIVN has built its business on offering exclusive content to customers and distributors.

42. Exclusive licenses are extremely valuable to LIVN, not only because they allow the TV Series Shows to be shown only on the LIVN services or on LIVN's approved exclusive licensees' services, but also because they convey an ownership interest which enables LIVN to exclude others from showing, dubbing, advertising, or distributing the TV Series Shows.

///

///

43. Defendants' Infringing Uses have caused significant harm to LIVN's reputation, goodwill among consumers, and distributors who consider LIVN a source for exclusive programming.

## UNITED STATES PREDICATE ACT

44. The copyright infringement involves predicate acts of infringement taking place in the United States.

45. Upon information and belief, Defendants obtained master copies of the Licensed Series shows pursuant to the Agreements entered into between the Parties in the United States, which provided Defendants a license to distribute, dub, and otherwise stream the Licensed Series within the Licensed Territories, including the United States. After termination of the Agreements, Defendants continued Infringing Uses of the Licensed Series within the United States, despite the proper termination of the Agreements.

46. Further, upon information and belief, Defendants first engaged in the Infringing Uses by way of dubbing the Licensed Series, copying the Licensed Series, and formatting the Licensed Series in the United States, specifically at its engineering facility in California and Florida with the intent to exploit the Licensed Series abroad.

47. Defendants also completed the Infringing Uses by first uploading the Licensed Series, including the unauthorized dubbed versions, to Defendants server in Florida, which was thereafter distributed globally.

48. Defendants carry out all dubbing, formatting, uploading, and broadcasting of shows from its headquarters in Florida and its engineering facility in California.

49. On information and belief Plaintiff alleges that Defendants violated Plaintiff's rights under 17 U.S.C. 106 by reproducing, distributing, and displaying, Plaintiff's copyrighted content in the United States, and creating derivative works from Plaintiff's copyrighted content in the United States, and then relying on and incorporating said infringing acts into further infringement abroad.

///

50. Defendants' infringements abroad could not occur without and certainly flow from its Infringing Uses in the United States, which include dubbing, uploading, and broadcasting on streaming services offered abroad and in the United States.

51. On information and belief, it is alleged that the ultimate beneficiary of the Infringing Uses are Defendants, American-based corporations.

## FIRST CLAIM FOR RELIEF

(For Copyright Infringement – Against all Defendants, and Each)

52. LIVN incorporates by reference the preceding paragraphs as if fully set forth herein.

53. LIVN is the exclusive owner of registered copyrights in the TV Series Shows in the United Kingdom, Europe, Australia, Africa (for certain content) and India (for certain content). Accordingly, LIVN holds the exclusive right to distribute, exhibit, stream, and dub the TV Series Shows.

54. Defendants infringed LIVN's rights by distributing, streaming, exhibiting, and dubbing the Licensed Series throughout the United Kingdom, Europe, Australia, Africa and India without LIVN authorization or consent.

55. At no time has LIVN authorized Defendants Infringing Uses of the Licensed Series.

56. Defendants knew that LIVN was the exclusive owner of the copyrights to the Licensed Series in the United Kingdom, Europe, Australia, and India. Despite that knowledge, Defendants willfully distributed and exploited the Licensed Series.

57. Defendants' Infringing Uses are willful, intentional, purposeful and reckless, in complete disregard of LIVN's rights and has caused substantial damage to LIVN. And such Infringing Uses have continued even after LIVN provided Defendants with notice of such Infringing Uses.

58. Defendants further infringed LIVN's exclusive copyrights in the Licensed Series in the United States, United States territories, Canada, and Latin

America by exploiting and distributing the Licensed Series after the proper termination of the Agreements.

59. Defendants continued Infringing Uses constitutes willful, intentional, purposeful and reckless conduct, in complete disregard to LIVN's exclusive rights.

60. Each violation of LIVN's rights in and to each copyrighted TV Series Show constitutes a separate and distinct act of copyright infringement by Defendants. Defendants infringed LIVN's copyrights.

61. As a result of the aforementioned infringement, Plaintiff has suffered actual damages, and Defendants have realized profits attributable to the infringement, in an amount to be established at trial.

## SECOND CLAIM FOR RELIEF

(For Vicarious and/or Contributory Copyright Infringement – Against all Defendants, and Each)

62. LIVN repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

63. Defendants are liable as contributory infringer for the Infringing Uses. Defendants knew that infringement occurred and is continuing to occur, and caused, enabled, facilitated and materially contributed to that infringement.

64. Mohler, as CEO and Owner of Olympusat and President of Ocean New Media LLC ("Ocean"), knew of the infringement continuing to occur and has caused, enabled, facilitated, and materially contributed to that infringement.

65. Defendants caused, enabled, facilitated, and materially contributed to the infringement by providing access to the masters of the Licensed Shows and authorizing and facilitating the Infringing Uses and continue doing the same.

66. Pursuant to the Agreements, Defendants knew that LIVN owned the exclusive rights to the Licensed Shows and were once more provided notice of such exclusive rights in LIVN's written termination notice.

67. Defendants are vicariously liabiliy because they had the ability to prevent the infringing conduct by refusing to dub, distribute, stream, or otherwise exploit the Licensed Series outside the scope of the Agreements and thereafter cease Infringing Use after being provided notice.

68. LIVN is informed and believes and thereon alleges that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

69. Each violation of LIVN's rights in and to each copyrighted Licensed Series constitutes a separate and distinct act of copyright infringement. Defendants contributorily infringed LIVN's copyrights for the Licensed Series in the Licensed Territories as well as elsewhere, including, the United Kingdom, India, Australia, and Europe.

70. As a result of the aforementioned infringement, Plaintiff has suffered actual damages, and Defendants have realized profits attributable to the infringement, in an amount to be established at trial.

## THIRD CLAIM FOR RELIEF

(Breach of Contract Against Defendant Ocean)

71. LIVN repeats, re-alleges, and incorporates herein by reference as though fully set forth herein.

72. The Agreement between LIVN and Defendants are valid and enforceable agreements between the parties.

73. LIVN has performed its obligations under the Agreements in all material respects.

74. The Agreements provided Defendants a license to the Licensed Series only within the Licensed Territories for an agreed-upon sum.

///

75. Defendants breached the Agreements by failing to abide by the relevant terms.

76. LIVN has been injured, and continues to be injured, by Defendants' material breach of the Agreements. LIVN is entitled to actual, compensatory, and consequential damages in the amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

## Against All Defendants

Wherefore, Plaintiff prays for judgment as follows against all Defendants and with respect to each claim for relief:

a. That Defendants, their affiliates, agents, and employees be enjoined from infringing Plaintiff's copyrights in and to the TV Series Shows.

b. That Plaintiff be awarded all profits of Defendants, and each, plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendants through their infringement, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages to the extent they are available under the Copyright Act, 17 U.S.C. §§ 504, *et seq.*;

c. That Plaintiff be awarded its costs and attorneys' fees to the extent they are available under the Copyright Act U.S.C. §§ 505, *et seq.*

d. That a trust be entered over all Infringing Uses, and all profits realized through the sales, distribution, exploitation, and dubbing of said TV Series Shows;

e. An award to LIVN of Defendant's profits attributable to its direct, contributory, and vicarious copyright infringement pursuant to 17 U.S.C. § 504(b), including by not limited to, licensing fees collected from third parties for the LIVN-exclusive TV Series Shows it purported to license

    in violation of LIVN's copyrights and all other profits it stands to gain from its infringement;

  f. An award to LIVN of monetary damages equal to LIVN's actual damages caused by Defendants direct, contributory, and vicarious copyright infringement, including, but not limited to, lost profits from receiving less in distribution fees, loss of subscribers, loss of good will and reputational harm;

  g. That Plaintiff be awarded pre-judgment interest as allowed by law;

  h. That Plaintiff be awarded the costs of this action; and

  i. That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

  Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Respectfully submitted,



Dated: August 3, 2023  By: _____

Scott Alan Burroughs, Esq.
Trevor W. Barrett, Esq.
Frank R. Trechsel, Esq.
DONIGER / BURROUGHS
*Attorneys for Plaintiff*