**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

LIVN WORLDWIDE, TLD.,
a Mauritius limited company,

        Plaintiff,                       Case No. 9:23-cv-81515-DMM

v.

OLYMPUSAT HOLDINGS, INC., et. al.,

        Defendants.

_____/
_____

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S**
**SECOND AMENDED COMPLAINT**
_____

Defendants, OLYMPUSAT HOLDINGS, INC., a Florida corporation ("Olympusat Holdings"); OLYMPUSAT, LLC, a Florida limited liability company f/k/a OLYMPUSAT, INC., a Florida corporation; THOMAS MOHLER, an individual ("Mohler")(collectively, "Olympusat"); and OCEAN NEW MEDIA, LLC, a Florida limited liability company ("Ocean") (collectively "Defendants"), by and through their undersigned counsel, hereby serves their Answer and Affirmative Defenses to the allegations contained in Plaintiff, LIVN WORLDWIDE, TLD ("LIVN" or "Plaintiff"), Second Amended Complaint, *see e.g.*, *generally,* Doc. 64, and in support thereof, states as follows:

**<u>Answering "Introduction"</u>**

1.     Defendants lack sufficient knowledge to admit or deny the allegations contained in paragraph 1 of the Second Amended Complaint; therefore, the allegations are denied.

2.     Defendants state that Ocean and LIVN entered into a fixed license agreement for television rights to six (6) series originally, on or around March 2019, in the United States, U.S.

Territories, Canada, and Latin America (the "2019 Agreement").  In an amendment to the 2019 Agreement, two (2) series were removed, on July 18, 2019 (the "2019 Amendment"). Otherwise, Defendants deny all remaining allegations contained in paragraph 2 of the Second Amended Complaint.

3.      Defendants state that Ocean and LIVN entered into another fixed license agreement with Ocean for additional content rights, to the television show, "The Wolf," on or around October 2021 (the "2021 Agreement'), but deny all remaining allegations contained in paragraph 3 of the Second Amended Complaint.

4.      Defendants state that the 2019 Agreement and 2021 Agreement[1] speak for themselves.  Otherwise, Defendants deny all remaining allegations of paragraph 4 of the Second Amended Complaint.

5.      Defendants deny as phrased the allegations contained in paragraph 5 of the Second Amended Complaint.

6.      Defendants admit the allegations contained in paragraph 6 of the Second Amended Complaint.

7.      Defendant Olympusat states that it owns and operates a web-based streaming service called "FREETV," but denies any remaining allegations contained in paragraph 7 of the Second Amended Complaint.

8.      Defendants deny the allegations contained in paragraph 8 of the Second Amended Complaint.

---

[1] The 2019 Agreement and 2021 Agreement were not attached to Plaintiff's Second Amended Complaint, Doc. 64; however, Defendants attached the agreements that they presume form the basis of this dispute to their Motion to Dismiss for Forum Non-Conveniens or Fed. R. Civ. P. 12(b)(3); or, in the alternative, Motion to Transfer Venue pursuant to  28 U.S.C. § 1404(a). Doc. 24.

295034130v.1

9.      Defendants deny the allegations contained in paragraph 9 of the Second Amended Complaint.

10.     Defendants state that the allegations contained in paragraph 10 of the Second Amended Complaint set forth legal conclusions to which no response is required, and to the extent a response is required, Defendants deny the same.

11.     Defendants state that the allegations contained in paragraph 11 of the Second Amended Complaint set forth legal conclusions to which no response is required, and to the extent a response is required, Defendants deny the same.

12.     Defendants state that the allegations contained in paragraph 12 of the Second Amended Complaint set forth legal conclusions to which no response is required, and to the extent a response is required, Defendants deny the same.

13.     Defendants state that the allegations contained in paragraph 13 of the Second Amended Complaint set forth legal conclusions to which no response is required, and to the extent a response is required, Defendants deny the same.

### Answering "Parties"

14.     Defendants state that Olympusat Holdings is a Florida corporation with its principal place of business located at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida, for jurisdictional purposes only. Answering further, Defendants state that Olympusat Holdings wholly owns and operates Olympusat, LLC f/k/a Olympusat, Inc., but deny the remaining allegations and any liability contained in paragraph 14 of the Second Amended Complaint.

15.     Defendants state that Olympusat, Inc. is a Florida corporation with its principal place of business located at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida, for jurisdictional purposes only. Otherwise, Defendants deny the remaining allegations and any

295034130v.1

liability contained in paragraph 15 of the Second Amended Complaint as phrased.

16.     Defendants state that Olympusat LLC is a Florida corporation with its principal place of business located at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida, for jurisdictional purposes only. Otherwise, Defendants deny the remaining allegations and any liability contained in paragraph 15 of the Second Amended Complaint as phrased.

17.     Defendants state that Olympusat Holdings, Olympusat, LLC f/k/a Olympusat, Inc. operate out its principal place of business located at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida, for jurisdictional purposes only. Otherwise, Defendants deny the remaining allegations and any liability contained in paragraph 17 of the Second Amended Complaint as phrased.

18.     Defendants state that Olympusat Holdings is the parent company of Ocean, a Florida corporation, with a principal place of business located at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida, for jurisdictional purposes only. Otherwise, Defendants deny the remaining allegations and any liability contained in paragraph 18 of the Second Amended Complaint.

19.     Defendants state that Mohler is a CEO and owner of Olympusat Holdings, and President of Ocean, but denies the remaining allegations and any liability contained in paragraph 19 of the Second Amended Complaint.

20.     Defendants cannot respond on behalf of defendants other than themselves.  To the extent the allegations contained in paragraph 20 of the Second Amended Complaint are directed to and construed against these Defendants, then Defendants deny such allegations.

21.     Defendants cannot respond on behalf of defendants other than themselves.  To the extent the allegations contained in paragraph 21 of the Second Amended Complaint are directed

4

to and construed against these Defendants, then Defendants deny such allegations.

22.     Defendants cannot respond on behalf of defendants other than themselves.  To the extent the allegations contained in paragraph 22 of the Second Amended Complaint are directed to and construed against these Defendants, then Defendants deny the allegations as phrased.

23.     Defendants cannot respond on behalf of defendants other than themselves. To the extent the allegations are directed to and construed against these Defendants, the Defendants deny the allegations contained in paragraph 23 of the Second Amended Complaint as phrased.

24.     Defendants     cannot     respond     on     behalf     of     "DOE[2]" defendants other than themselves.  To the extent the allegations contained in paragraph 24 of the Second Amended Complaint are directed to and construed against these Defendants, then Defendants deny such allegations.

25.      Defendants state that the allegations contained in paragraph 25 of the Second Amended Complaint set forth legal conclusions to which no response is required, and to the extent a response is required, then Defendants deny such allegations.

**Answering "Jurisdiction and Venue"**

26.     Defendant states that the allegations contained in paragraph 26 of the Second Amended Complaint set forth legal conclusions to which no response is required, but to the extent a response may be deemed required, admits that the Complaint purports to set forth claims for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et. seq.*, and refer all questions

---

[2] Florida law is clear that one may not avoid the operations of the statute of the limitations by bringing suit against a John Doe defendant. Substituting a named defendant for a John Doe defendant is the legal equivalent of filing a new claim  *See*. *D.B. v. Orange Cty*., No. 6:13-cv-434-Orl-31DAB, 2013 U.S. Dist. LEXIS 105672, at *2-3 (M.D. Fla. July 26, 2013)(citing *e.g., Grantham v. Blount, Inc.*, 683 So. 2d 538 (Fla. 2d DCA 1996) ("In Florida, the filing of a "John Doe" complaint does not commence an action against a real party nor does it toll the statute of limitations.")).

of law to this Honorable Court.

27.     Defendants state that the allegations contained in paragraph 27 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 27 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

28.     Defendants refer all questions of law to this Honorable Court and all questions of fact to the trier of fact, and confirm the proper venue is Southern District of Florida, but state the allegations contained in paragraph 29 of the Second Amended Complaint that this Court has jurisdiction over Defendants.  To the extent any of the remaining allegations in paragraph 28 of the Amended Complaint are understood to be factual, Defendants deny such allegations and demand strict proof thereof.

29.     Defendants state that the allegations contained in paragraph 29 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 29 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

30.     Defendants deny the allegations contained in paragraph 30 of the Second Amended Complaint as phrased.

31.     Defendants state that the allegations contained in paragraph 31 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 31 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations and demand strict proof thereof.

32.     Defendants state that the allegations contained in paragraph 32 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent

any of the remaining allegations in paragraph 32 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

33.     Defendants cannot respond on behalf of the defendants other than themselves.  To the extent the allegations contained in paragraph 33 of the Second Amended Complaint are directed to and construed against these Defendants, then Defendants deny such allegations.

**Answering "Claims Related to Plaintiff's Subject Works the Agreements"**

34.     Defendants lack sufficient knowledge to admit or deny the allegations contained in paragraph 34 of the Second Amended Complaint; therefore, the allegations are denied.

35.     Defendants lack sufficient knowledge to admit or deny the allegations contained in paragraph 35 of the Second Amended Complaint as to whether LIVN entered into licensing agreements with media and management firms other than Defendants; therefore, the allegations are denied.  Answering further, Defendants state that the 2019 Agreement and 2021 Agreement speak for themselves and deny any and all remaining allegations contained in paragraph 35 of the Second Amended Complaint and demand strict proof thereof.

36.     Defendants state that the 2019 Agreement and 2021 Agreement speak for themselves.  Otherwise, Defendants deny the remaining allegations of any liability contained in paragraph 36 of the Second Amended Complaint.

37.     Defendants state that the 2019 Agreement and 2021 Agreement speak for themselves.  Otherwise, Defendants deny the remaining allegations and any liability contained in paragraph 37 of the Second Amended Complaint.

38.     Defendants state that the 2019 Agreement speaks for itself.  Otherwise, Defendants deny the remaining allegations and any liability contained in paragraph 38 of the Second Amended Complaint.

295034130v.1

39.     Defendants state that the 2019 Agreement speaks for itself. Otherwise, Defendants deny the remaining allegations and any liability contained in paragraph 39 of the Second Amended Complaint.

40.     Defendants deny the allegations contained in paragraph 40 of the Second Amended Complaint.

41.     Defendants deny the allegations contained in paragraph 41 of the Second Amended Complaint.

42.     Defendants state that the 2019 Agreement and 2021 Agreement speak for themselves.  Otherwise, Defendants deny the remaining allegations and any liability contained in paragraph 42 of the Second Amended Complaint.

43.     Defendants cannot respond on behalf of defendants other than themselves.  To the extent the allegations contained in paragraph 43 of the Second Amended Complaint are directed to and construed against these Defendants, then Defendants deny such allegations.

44.     Defendants state the termination rights contained in the 2019 Agreement and 2021 Agreement speak for themselves. Answering further, Defendants deny the remaining allegations contained in paragraph 44 of the Second Amended Complaint.

45.     Defendants state that the allegations contained in paragraph 45 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 45 of the Second Amended Complaint are understood to be factual, Defendants deny the allegations as phrased.

46.     Defendants deny the allegations contained in paragraph 46 of the Second Amended Complaint.

47.     Defendants state that the allegations contained in paragraph 47 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 47 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

48.     Defendants state that the allegations contained in paragraph 48 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 48 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

**Answering "The Infringement"**

49.     Defendants state that the allegations contained in paragraph 49 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 49 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

50.     Defendants state that the allegations contained in paragraph 50 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 50 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

51.     Defendants lack sufficient knowledge or information to admit or deny the allegations contained in paragraph 51 of the Second Amended Complaint.

52.     Defendants lack sufficient knowledge or information to admit or deny the allegations contained in paragraph 52 of the Second Amended Complaint.

53.     Defendants lack sufficient knowledge or information to admit or deny the allegations contained in paragraph 53 of the Second Amended Complaint.

54.     Defendants deny the allegations contained in paragraph 54 of the Second Amended Complaint.

55.     Defendants deny the allegations contained in paragraph 55 of the Second Amended Complaint.

56.     Defendants state that the allegations contained in paragraph 56 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 56 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

57.     Defendants lack sufficient knowledge to admit or deny the allegations contained in paragraph 57 of the Second Amended Complaint; therefore, the allegations are denied.

58.     Defendants lack sufficient knowledge to admit or deny the allegations contained in paragraph 58 of the Second Amended Complaint; therefore, the allegations are denied.

59.     Defendants deny the allegations contained in paragraph 59 of the Second Amended Complaint.

**Answering "United States Predicate Act"**

60.     Defendants refer all questions of law to this Honorable Court and all questions of fact to the trier of fact and state no response is required, but to the extent a response is required to paragraph 60 of the Second Amended Complaint that this Court, the allegations are denied.

61.     Defendants state that the allegations contained in paragraph 61 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 61 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

62.     Defendants deny the allegations contained in paragraph 62 of the Second Amended

295034130v.1

Complaint as phrased.

63.     Defendants deny the allegations contained in paragraph 63 of the Second Amended Complaint as phrased.

64.     Defendants deny the allegations contained in paragraph 64 of the Second Amended Complaint as phrased.

65.     Defendants deny the allegations contained in paragraph 65 of the Second Amended Complaint.

66.     Defendants deny the allegations contained in paragraph 66 of the Second Amended Complaint.

67.     Defendants deny the allegations contained in paragraph 67 of the Second Amended Complaint as phrased.

68.     Defendants deny the allegations contained in paragraph 68 of the Second Amended Complaint as phrased.

### Answering "First Claim for Relief"
(For Copyright Infringement – Against all Defendants, and Each)

69.     Answering paragraph 69 of the Second Amended Complaint, Defendants repeat and incorporate the answers and allegations set forth in paragraphs 1 through 68 above as if fully set forth herein.

70.     Defendants lack knowledge sufficient to admit or deny the allegations contained in paragraph 70 of the Second Amended Complaint.

71.     Defendants deny the allegations contained in paragraph 71 of the Second Amended Complaint.

72.     Defendants cannot respond on behalf of defendants other than themselves.  To the extent the allegations contained in paragraph 72 of the Second Amended Complaint are directed

to and construed against these Defendants, then Defendants deny such allegations.

73.     Defendants state that the allegations contained in paragraph 73 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 73 of the Second Amended Complaint are understood to be factual, Defendants deny such allegations.

74.     Defendants deny the allegations contained in paragraph 74 of the Second Amended Complaint.

75.     Defendants deny the allegations contained in paragraph 75 of the Second Amended Complaint.

76.     Defendants deny the allegations contained in paragraph 76 of the Second Amended Complaint.

77.     Defendants deny the allegations contained in paragraph 77 of the Second Amended Complaint.

78.     Defendants deny the allegations contained in paragraph 78 of the Second Amended Complaint.

79.     Defendants deny the allegations contained in paragraph 79 of the Second Amended Complaint.

### Answering "Second Claim for Relief"
(For Vicarious and/or Contributory Copyright Infringement –
Against All Defendants, and Each)

80.     Answering paragraph 80 of the Second Amended Complaint, Defendants repeat and incorporate the answers and allegations set forth in paragraphs 1 through 79 above as if fully set forth herein.

81.     Defendants deny the allegations contained in paragraph 81 of the Second Amended

295034130v.1

Complaint.

82.     Defendants deny the allegations contained in paragraph 82 of the Second Amended Complaint.

83.     Defendants deny the allegations contained in paragraph 83 of the Second Amended Complaint.

84.     Defendants deny the allegations contained in paragraph 84 of the Second Amended Complaint as phrased.

85.     Defendants deny the allegations contained in paragraph 85 of the Second Amended Complaint.

86.     Defendants deny the allegations contained in paragraph 86 of the Second Amended Complaint.

87.     Defendants deny the allegations contained in paragraph 87 of the Second Amended Complaint.

88.     Defendants deny the allegations contained in paragraph 88 of the Second Amended Complaint.

### Answering "Third Claim for Relief"
(Breach of Contract Against Defendant Ocean and Olympusat)

89.     Answering paragraph 89 of the Second Amended Complaint, Defendants repeat and incorporate the answers and allegations set forth in paragraphs 1 through 88 above as if fully set forth herein.

90.     Defendants state that the allegations contained in paragraph 90 of the Second Amended Complaint contain legal conclusions to which no response is required.  To the extent any of the remaining allegations in paragraph 90 of the Second Amended Complaint are understood to be factual, these Defendants deny such allegations.

91.     Defendants deny the allegations contained in paragraph 91 of the Second Amended Complaint as phrased.

92.     Defendants state that the 2019 Agreement and 2021 Agreement speak for themselves. To the extent any response is deemed required, these Defendants deny that Plaintiff should be granted any of the relief requested in paragraph 92 of the Second Amended Complaint.

93.     Defendants deny the allegations contained in paragraph 93 of the Second Amended Complaint.  To the extent any of the remaining allegations in paragraph 93 of the Second Amended Complaint are understood to be factual and apply to all Defendants, these Defendants deny such allegations.

94.     Defendants deny the allegations contained in paragraph 94 of the Second Amended Complaint.

## PRAYER FOR RELIEF

The Prayer for Relief does not require a response. To the extent any response is deemed required, Defendants deny that Plaintiff should be granted any of the relief requested in paragraphs (a)–(i).

## AFFIRMATIVE DEFENSES

Defendants deny any allegation not specifically admitted herein. Defendants state the following separate and affirmative defenses without assuming the burden of proof on such defenses that would otherwise rest with Plaintiff.

## FIRST AFFIRMATIVE DEFENSE
(Failure to State a Cause of Action)

1.     Plaintiff fails to state a cause of action for which relief can be granted because the Second Amended Complaint, and each of the causes of action set forth therein, fail to allege facts sufficient to state a claim for which relief can be granted against the Defendants.

295034130v.1

**SECOND AFFIRMATIVE DEFENSE**
(Fair Use)

2.      Plaintiff's claims are barred in whole, or in part, by fair use.

**THIRD AFFIRMATIVE DEFENSE**
(Failure to Mitigate)

3.      Plaintiff's claims are barred, and or should be limited, in whole or in part due to Plaintiff's failure to mitigate its own damages.

**FOURTH AFFIRMATIVE DEFENSE**
(Unjust Enrichment)

4.      Plaintiff is barred from recovery in whole or in part because Plaintiff would be unjustly enriched if Plaintiff is permitted to recover on the Second Amended Complaint.

**FIFTH AFFIRMATIVE DEFENSE**
(Good Faith)

5.      Defendants acted in good faith and without intent to infringe.

**SIXTH AFFIRMATIVE DEFENSE**
(17 U.S.C. §101 *et seq.*)

6.      Defendants reserve the right to rely on any and all judicially recognized defenses under the Copyright Act of 1976, Title 17, U.S.C. §101, *et seq.*

**SEVENTH AFFIRMATIVE DEFENSE**
(Excuse)

7.      Plaintiff's claims are barred, in whole or in part, because they are based on acts that are or were privileged and/or justified and/or excused, and therefore are not actionable.

**EIGHTH AFFIRMATIVE DEFENSE**
(Unclean Hands)

8.      Plaintiff's breach of contract claim is barred by the doctrine of unclean hands.

295034130v.1

## NINTH AFFIRMATIVE DEFENSE
(Failure to Attach Documents)

9.      Plaintiff failed to attach any contract to the Second Amended Complaint, which would substantiate the existence of any contract it intends to rely upon for its Third Claim for Relief.

10.     Specifically, Plaintiff failed to attach the following documents: the 2019 Agreement, its amendments, and the 2021 Agreement, and its amendments, to the Second Amended Complaint:

- Program Licensing Agreement between Ocean New Media, LLC and LIVN Worldwide, Ltd. executed on or around March 31, 2019.

- Amendment No. 1 to Program Licensing Agreement between Ocean New Media, LLC and LIVN Worldwide, Ltd. executed on July 18, 2019.

- Amendment 2 to Program Licensing Agreement between Ocean New Media, LLC and LIVN Worldwide, Ltd. executed on July 21, 2021.

- Program Licensing Agreement between Ocean New Media, LLC and LIVN Worldwide, Ltd. executed on October 21, 2021.

- Amendment 1 to Program Licensing Agreement between Ocean New Media, LLC and LIVN Worldwide, Ltd. executed on April 19, 2022.

- Amendment 2 to Program Licensing Agreement between Ocean New Media, LLC and LIVN Worldwide, Ltd. effective as of May 26, 2022.

## TENTH AFFIRMATIVE DEFENSE
(No Attorneys' Fees)

11.     Plaintiff fails to state facts sufficient to permit recovery of attorney's fees.

## ELEVENTH AFFIRMATIVE DEFENSE
(Breach by Plaintiff)

12.     Plaintiff's claims are barred as it breached the Program Licensing Agreement with Defendants executed on or around March 31, 2019 contract with Defendant, which also excused Defendants from performance under the contract.

## TWELFTH AFFIRMATIVE DEFENSE
(Fraud)

13.     Plaintiff's claims are barred as Plaintiff defrauded Defendants in fraudulently inducing and/or concealing material facts in inducing Defendants to enter into contracts at issue.

## THIRTEENTH AFFIRMATIVE DEFENSE
(Reservation to Amend)

14.     Defendants hereby give notice that they intend to rely upon any other defense or claim that may become available or appear during the discovery proceedings and hereby reserve their right to amend their Answer and/or Counterclaim to assert any such claim or defense.

## COUNTERCLAIM

For its counterclaim against Counterclaim-Defendant, LIVN WORLDWIDE, TLD., Counterclaimants, OLYMPUSAT HOLDINGS, INC., a Florida corporation; OLYMPUSAT, INC., a Florida corporation f/k/a OLYMPUSAT, LLC, a Florida limited liability company; and OCEAN NEW MEDIA, LLC; a Florida limited liability corporation, allege as follows:

## NATURE OF THE ACTION

1.     This civil action seeks damages for breach of license, tortious interference, and unjust enrichment under Florida law.

## PARTIES

2.     Counterclaimant, OLYMPUSAT HOLDINGS, INC. ("Olympusat Holdings"), is a Florida corporation organized and existing under the State of Florida, having an office located at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida 33401.

3.     Olympusat Holdings is the parent company of OLYMPUSAT, INC. f/k/a OLYMPUSAT, LLC ("Olympusat, Inc.") and OCEAN NEW MEDIA, LLC ("Ocean"), with both entities having an office and place of business located at 477 S. Rosemary Ave., Ste. 306, West Palm Beach, Florida 33401 (collectively "Olympusat").

4.      Upon information and belief, Counter-Defendant, LIVN Worldwide, TLD, ("Counter-Defendant" or "LIVN") is a film and television production and distribution company, having an office and place of business located at 31 Avenue Talipots, Quatre Bornes, Mauritius.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction as to LIVN's claims under 28 U.S.C. §§ 1331, because LIVN brings claims under the Copyright Act, Title 17 U.S.C. § 101, *et. seq.* Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims raised here because they arise from the same alleged facts as those giving rise to LIVN's federal law claims.

6.      This Court has personal jurisdiction over LIVN (a) pursuant to Fla. Stat. § 48.193(1)(a) because LIVN is operating, conducting, engaging in, or carrying on a business or business venture in this state; (b) pursuant to Fla. Stat. §48.193(1)(g) because LIVN breached contractual duties that it was required and/or engaged in tortious acts in this state; and (c) pursuant to Fla. Stat. § 48.193(2) because LIVN is engaged in substantial and not isolated activity within this state.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Counter-Defendant, LIVN transacts business in this district, and a substantial part of the events giving rise to Counterclaimants' claims occurred and continue to occur in this district.

## FACTUAL ALLEGATIONS

8.       Olympusat Holdings is a vertically integrated distributor and owner of Spanish and English-language channels in the U.S. and Latin America. Olympusat Holdings is the corporate parent of Olympusat, Inc. and Ocean (collectively "Olympusat"). Olympusat provides services related to various aspects of film and TV production, including the acquisition and production of feature-length and short films, episodic series, music videos, advertising, various

networks, and products. Olympusat has expanded into the OTT (over-the-top media) and CTT (connected TV) sectors with the FREETV application and FAST channels, establishing distribution partnerships with all major MVPDs (multichannel video programming distributors) in the U.S. and all major OTT platforms in the U.S. and Latin America.

9.    Upon information and belief, LIVN is a film and television production and distribution company that provides multi-layered distribution services to media and management firms including the licensing of video programming.

10.    Ocean and LIVN entered into two (2) licensing agreements dated March 31, 2019 ("the 2019 Agreement") and October 5, 2021 ("the 2021 Agreement") (collectively "the Licensing Agreements") for the distribution of certain program titles in a limited number of countries.

11.    The Licensing Agreements provide Ocean, a wholly owned subsidiary of Olympusat, Inc., with the right to (i) exploit certain program titles, including their English dubbed versions, in the licensed territory of the U.S., its territories and possessions, Puerto Rico, Canada, and Latin America; and (ii) sublicensing rights for these program titles under the Licensing Agreements.

12.    At all times material herein, Olympusat has exercised its licensing and sublicensing rights in accordance with the terms of the Licensing Agreements.

### The 2019 Agreement[3]

13.    On or around March 31, 2019, LIVN and Ocean executed a Program Licensing Agreement to license (i) six (6) fictional television series titled "Martial Universe," "Nothing Gold Can Stay," "Inference Notes," "She is Beautiful," "Legend of Hao Lan," and "I Will Never Let You Go" in the U.S., Puerto Rico, U.S. territories and possessions, Canada, and Latin America; and (ii) sublicensing rights for the program title(s) mentioned above, as follows:

> Exclusive: Licensee may exclusively broadcast the Program Title(s) in the Authorized Language (both dubbing and subtitled versions), during the License Period on any screen or device capable of video programming receptions via the following media …("the 2019 Exclusivity Provision")

---

[3] The 2019 Agreement, and its amendments, will be filed separately under seal.

…

> <u>Right to sublicensee</u>: Licensee shall have the right to sublicense all of the Program Titles subject to the Licensed Broadcast Rights granted herein in the Licensed Territory throughout the Licensed Period.  Licensee agrees that the License Period for any sublicense for a Program Title, to be granted in accordance with this Agreement, shall expire no later than the expiration date (as defined below in Schedule A) for that Program Title.

> …

> <u>Authorized Language</u>: Spanish, English, and Brazilian Portuguese (dubbed and subtitled versions for all three languages) with the right to dub, translate, or subtitle at Licensee's cost as necessary in the Licensee's sole discretion.

14.     Paragraph D of the 2019 Agreement granted Olympusat with broad sublicensing agreement rights for the Program Title(s) to broadcast on any screen or device capable of video programming receptions through various media outlets in the licensed territories of U.S., Puerto Rico, U.S. territories and possession, Canada, and Latin America.

15.     If a licensing rights dispute arose under the 2019 Agreement, the Licensor was required to notify the Licensee in writing regarding its intent to withdraw a program title, as follows:

> **Withdrawal of a Program Title**: LICENSOR shall have the right to withdraw a Program Title from the Agreement in the event that there is a legitimate rights issue, which the LICENSOR shall notify the LICENSEE of in a writing signed by  a legal representative of LICENSOR on no less than thirty (30) days advance notice to LICENSEE, provided, however, that in LICENSEE's sole discretion, LICENSOR shall either (i) refund a prorata amount of the Licensee Fee for said Program Title or (ii) shall replace the withdrawn Program Title with a Program Title of similar or better quality, as approved by the LICENSEE, and shall grant a License Period for the new Program Title which is the same length as the original License Period for the withdrawn Program Title.

16.     Additionally, the 2019 Agreement's Governing Law provision requires the parties to participate in several dispute resolution mechanisms as follows:

> **Governing Law:**  All questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be governed by the State of Florida, without regard to its conflict of law provisions. The parties agree that the venue for any action arising out of a controversy or dispute related to this

Agreement shall be conducted in a court of competent jurisdiction within Palm Beach County, Florida, however, the parties hereto agree to attempt to resolve their difference (i) first by utilizing alternative dispute resolution methods initially by mutual agreement, (ii) second by binding arbitration, and then, only if (i) and (ii) fail, will the parties resort to a judicial resolution of the dispute.

17.     Further, the 2019 Agreement provides the permissible grounds for termination, which included a notice requirement for the breach and dispute resolution protocols, as follows:

**<u>Default: Termination</u>**

(a)  Default: Any one of the following shall constitute an "Event of Default" under this Agreement:

(iii) If either party defaults in the performance of any other obligation, which default remains uncured after a period of sixty (60) days after the non-defaulting party sends written notice of such default to the defaulting party.

18.     Thus, any claim of breach requires written notice, 60 days to cure, and mutual good faith to resolve any issues under the 2019 Agreement.

19.     The parties executed two amendments to the 2019 Agreement.  On or around July 18, 2019, LIVN and Ocean executed Amendment No. 1 to the Program Licensing Agreement to delete two (2) of the program titles, "Inference Notes" and "She is Beautiful," and reduced the total License Fees due to this modification and removal under the 2019 Program License Agreement.

20.     On or around July 21, 2021, LIVN and Ocean executed Amendment 2 to the Program Licensing Agreement to add "Spain" to the section titled "Licensed Territory" under section E, "Licensed Network/Territory" of the Terms Summary. In addition, Olympusat agreed to pay additional consideration for this addition under the amendment.

**The 2021 Agreement**[4]

21.     On or around October 5, 2021, LIVN and Ocean executed a Program Licensing Agreement to license the fictional television series titled "The Wolf" to distribute in the U.S., Puerto Rico, U.S. territories and possession, Canada, and Latin America (the "2021 Agreement").

22.     Under paragraph L of the 2021 Agreement, Olympusat's redistribution rights are likewise broad.  The 2021 Agreement gave Olympusat the right to broadcast "The Wolf" on any screen or device capable of video programming receptions through various media outlets in the licensed territories of the U.S., Puerto Rico, U.S. territories and possession, Canada, and Latin America.

23.     The 2021 Agreement also requires that the Licensor notify the Licensee in writing as to whether the Licensor will withdraw "The Wolf," as follows:

> **Withdrawal of a Program Title**: LICENSOR shall have the right to withdraw a Program Title from the Agreement in the event that there is a legitimate rights issue, which the LICENSOR shall notify the LICENSEE of in a writing signed by a legal representative of LICENSOR, on no less than thirty (30) days advance notice to LICENSEE, provided, however, that in LICENSEE's sole discretion, LICENSOR shall either (i) refund a prorata amount of the License Fee for said Program Title or (ii) shall replace the withdrawn Program Title with a Program Title of similar or better quality, as approved by the LICENSEE, and shall grant a License Period for the new Program Title which is the same length as the original License Period for the withdrawn Program Title.

24.     Similarly, the 2021 Agreement's Governing Law provision contains the following dispute resolution mechanisms, which is noted as follows:

> **Governing Law:**  All questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be governed by the State of Florida, without regard to its conflict of law provisions. The parties agree that the sole venue for the resolution of any action arising out of a controversy or dispute related to this Agreement shall be conducted in Palm Beach County, Florida.  The parties hereto agree to attempt to resolve their differences by utilizing alternative dispute resolution methods as follows: (i) first initially by mutual agreement, (ii) second by non-binding mediation, and then, only if (i) and (ii) fail, will the parties

---

[4] The 2021 Agreement and its amendments will be filed in a separate motion under seal.

resort to binding arbitration in accordance with the Rules of the American Arbitration Association for Commercial Disputes. The parties to any arbitration proceeding shall equally bear the cost of the arbitrator. The arbitration proceeding shall be conducted before a single arbitrator. The prevailing party in any such arbitration proceedings shall be entitled to recover their reasonable costs and attorney's fees associated with the non-binding mediation, the arbitration, the confirmation of any award, and any appeals taken therefrom.

25.     On or around April 19, 2022, LIVN and Ocean executed Amendment No. 1 to the

2021 Program Licensing Agreement to modify the language to provide Ocean with nonexclusive

rights for the redistribution of the English Dubbed version of "The Wolf" and payment for

additional consideration for this addition under the 2021 Program Licensing Agreement:

> The following language is hereby deleted from Section D, "Licensed Broadcast Rights" …And replaced with:
>
>> Exclusivity: For the Spanish dubbed versions of the Program Title the rights shall be exclusive.
>>
>> For the English, Spanish and Portuguese subtitled versions of the Program Title, and the English dubbed versions of the Program Title, the rights shall be non-exclsuive.
>>
>> The English Dubbed version is for the use on the Licensed Networks only and not for redistribution.
>
> The following language is hereby deleted from Section I, "Authorized Language" …And replaced with:
>
>> Spanish, English, Portuguese, and original language, as follows:
>> Dubbed version: Spanish (exclusively) and English (non-exclusively)
>> Subtitled version: Spanish, English, Portuguese (non-exclusively)

26.     Amendment No. 1 to the 2021 Program Licensing Agreement provided Olympusat

with similar, non-exclusive language rights for the English-dubbed version of the Program Title,

"The Wolf," in the licensed territory of the U.S., including its territories and possessions, Puerto

Rico, Canada, and Latin America and sublicensing rights for the "The Wolf."

27.     On or around May 26, 2022, LIVN and Ocean executed Amendment 2 to the Program Licensing Agreement to correct a scrivener's error in Amendment 1 with respect to the first payment. Specifically, Amendment 1 in paragraph 3 provided that "A first payment of Nine Thousand and Eight Hundred Dollars ($9,800.00 USD) to be paid upon the mutual execution of **this Amendment 2**" ("the Scrivener's Error") when it should have stated "this Amendment 1." Accordingly, said Amendment 2 deletes the Scrivener's Error and replaces it with "A first payment of Nine Thousand and Eight Hundred Dollars ($9,800.00 USD) to be paid upon the mutual execution of **this Amendment 1**." No other changes to the Amendment 1 was effectuated by Amendment 2.

28.     The 2021 Agreement contains the same permissible grounds for termination as in the 2019 Agreement, which required notice of breach and similar dispute resolution protocols:

**<u>Default: Termination</u>**

 (a) Default: Any one of the following shall constitute an "Event of Default" under this Agreement:

(iii) If either party defaults in the performance of any other obligation, which default remains uncured after a period of sixty (60) days after the non-defaulting party sends written notice of such default to the defaulting party.

29.     As such, any claim of breach requires the parties to provide a 60-day written notice for removal, 60 days to cure, and requires mutual good faith to resolve any issues.

30.     Accordingly, the 2019 Agreement (the "2019 Licensing Agreement") provided Olympusat with the exclusive Spanish, English, and Brazilian Portuguese dubbing and sub-titling language rights for four (4) program titles, "Martial Universe," "Nothing Gold Can Stay," "Legend of Hao Lan," and "I Will Never Let You Go" (the "Program Titles") and sublicensing rights for these Program Titles for redistribution in the U.S., Puerto Rico, U.S. territories and possessions, Canada, and Latin America.

295034130v.1

31.     The 2021 Agreement (the "2021 Agreement") provided Olympusat with non-exclusive English, Spanish and Portuguese language subtitle rights for one (1) program title "The Wolf" and sublicensing rights for this Program Title on an exclusive basis for Spanish dubs and non-exclusive for English dubs for redistribution in the U.S., Puerto Rico, U.S. territories and possessions, Canada and Latin America.

32.     At all times material herein, Olympusat has not authorized access to the Program Titles under the Licensing Agreements for anywhere outside the licensed territories as defined in the Licensing Agreements.

33.     Olympusat has not made its FREETV application available in Australia, the UK, Ireland, India, and Mauritius territories because the content featured on the FreeTV app itself is geographically restricted to the territories for which content has been licensed to Olympusat under the Licensing Agreements.

### The Dispute Over the Licensing Series Distributed Outside the Licensed Territories

34.     By 2020, LIVN was well aware of Olympusat's major clients and projects, including Olympusat's FreeTV application, the top Ad-supported On-Demand Video Service, which is available in the U.S. and most Latin American countries.  Thus, with full knowledge that Olympusat had already spent over two years advertising and sublicensing the Program Titles to various media networks and platforms, including its FreeTV application, LIVN threatened to remove and terminate Olympusat's rights to the Program Titles under the Licensing Agreements.

35.     On May 1, 2023, LIVN sent Ocean a notice of termination of the Program Titles under the Licensing Agreements, claiming that Olympusat engaged in copyright infringement by distributing the Program Territories in Australia, UK, Ireland, India, and Africa.  LIVN's claims

are completely unfounded and unsupported. Olympusat's FreeTV does not provide access to content outside of the territories enumerated in the Licensing Agreements.

36.     Notwithstanding, on April 28, 2023, and May 1, 2023, LIVN insisted, repeatedly and without justification, that Olympusat is in violation of the Licensing Agreements and demanded that Olympusat "within 3 working days…[make] full payment of compensatory damages, plus removal of the English Dub episodes…from [the] FREETV website and Apps . . ."

37.     On May 3, 2023, Olympusat sent a letter to LIVN reiterating its non-exclusive language rights and redistribution for the Program Title(s) granted under the 2021 Agreement and reminded LIVN of the parties' requirements for the parties to engage in the dispute resolutions protocols under these Licensing Agreements, to which LIVN responded with the filing of the instant lawsuit.

38.     In addition, Olympusat proactively pulled the Program Titles under the Licensing Agreements.

39.     Thus, LIVN has made repeated and unfounded demands that Olympusat stop using the Program Titles immediately without engaging in the dispute resolution mechanisms without compliance with the withdrawal provision contained in the Licensing Agreements, resulting in a breach of the Licensing Agreements.

40.     Because Olympusat proactively pulled the Program Titles under the Licensing Agreements, Olympusat lost revenue for the Program Titles, advertising, sublicensing revenue, and reputational damage by LIVN's claims and termination of the Licensing Agreement. Olympusat remains uncompensated for these expenses, which were directly caused by LIVN's repudiation of its obligation under the Licensing Agreements.

## COUNT I: BREACH OF LICENSE
### (As to LIVN)

41.     Olympusat hereby re-alleges and incorporates by reference paragraphs 1 through 40 as if set forth herein.

42.     This count is for breach of license against LIVN.

43.     On or about March 31, 2019, and October 5, 2021, Ocean entered into license agreements with LIVN (the "Licensing Agreements") to distribute, advertise, dub, and stream six (6) television series shows in specific countries.

44.     Olympusat abided by all the terms of the License and, as a result, had the right to distribute and sublicense the Program Titles according to the Licensing Agreements.

45.     Upon information and belief, in an effort to increase and extract additional payment in violation of the Licensing Agreements, in communications sent on April 28, 2023 and May 1, 2023, LIVN made statements that it would treat Olympusat and Ocean's use of Licensing Series as an infringement and terminated the rights to the Licensed Series that were not permitted under the Licensing Agreements.

46.     LIVN's repeated, unambiguous statements that Olympusat's use of the Program Titles under the Licensing Agreements was unlicensed, combined with its demands for additional payment for the alleged infringement, constituted a definite and unconditional repudiation of the 2019 Agreement and 2021 Agreement.

47.     Due to LIVN's breach of the 2019 and 2021 Licensing Agreement(s), Olympusat suffered substantial damages for proactively removing the Program Titles from its media network and platforms. The damages suffered include but are not limited to loss of already paid licensing fees, advertising and sublicensing, costs of dubbing the content, and reputational damage, all in amounts to be proven at trial.

## COUNT II: TORTIOUS INTERFERENCE
### (As to LIVN)

48.     Olympusat hereby re-alleges and incorporates by reference paragraphs 1 through 40 as if set forth herein.

49.     Olympusat states that LIVN knew of the existence of business relationship(s) and agreement(s) with its sublicensee, or potential sublicensee, to distribute Program Titles under the Licensing Agreements.

50.     LIVN intentionally acted to disrupt Olympusat's business and ongoing business agreement/relationship that Olympusat has, and or had, with its sublicensees, or potential sublicensees, to distribute the Program Titles under the Licensing Agreements without justification as its copyright claims are frivolous attempt to increase and extract additional payments from Olympusat.

51.     Specifically, LIVN attempted to extort money from Olympusat when it sent letters to Olympusat's clients asserting that Olympusat was in breach of the 2019 Licensing Agreement and 2021 Licensing Agreement and threatened to include Olympusat's clients in the instant action if Olympusat failed to pay the amounts demanded in these letters.

52.     LIVN has caused Olympusat's relationship with its sublicensees to be tenuous due to LIVN's ongoing threats to terminate the Program Titles subject to the Licensing Agreements. Therefore, it jeopardizes Olympusat's overall operations and existence.

## COUNT III – UNJUST ENRICHMENT
### (As to LIVN)

53.     Olympusat hereby re-alleges and incorporates paragraphs 1 through 40 by reference as if set forth herein.

54.     The elements of a cause of action for unjust enrichment are that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *F.H. Paschen, S.N. Nielsen & Assoc., LLC v. B&B Site Development, Inc.*, Case No. 4D19-38639 (Fla. 4th DCA 2021) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 387 (Fla. 4th DCA 1997)).

55.     LIVN conferred a benefit on Olympusat by accepting license fees paid by Olympusat under the Licensing Agreements.  LIVN knew that Olympusat was sublicensing the Program Titles to other media firms, networks, and platforms.

56.     Because LIVN threatened to remove and terminate the Licensing Agreements prior to the expiration of the licensing terms and threatened to make the dispute of public interest to other content licensors, LIVN breached the withdrawal and termination provisions under the Licensing Agreements.

57.     Under the present circumstances, it would be inequitable to allow LIVN to keep the total licensing fees paid by Olympusat and deny Olympusat access to the dubbed and sub-titles versions of the Program Titles under the Licensing Agreements. LIVN must pay to compensate Olympusat completely by paying a refund for the cost of the withdrawal of a program that cost Olympusat $2,000 per hour of programming dubbed, and the required pro rata amount of license fee for withdrawal and termination provision(s) contained under the parties' Licensing Agreements.

## COUNT IV – BREACH OF CONTRACT
### (As to LIVN)

58.     Olympusat hereby re-alleges and incorporates paragraphs 1 through 57 by reference as if set forth herein.

59.     Pursuant to the 2019 Exclusivity Provision, LIVN granted Olympusat exclusive license to all "60 episodes x 45 minutes per episode" of "Martial Universe."

60.     LIVN breached the 2019 Agreement, specifically the 2019 Exclusivity Provision, when LIVN licensed or attempted to license, the episodes of "Martial Universe" to third parties, including, without limitation, Vubiquity, Inc., thereby, upon information and belief, making said episodes available to other entities.

61.     Olympusat performed under the 2019 Agreement or its performance is excused due to LIVN's breach of the 2019 Agreement.

62.     Olympusat suffered harms, including, without limitation, loss of profits, proximately caused by LIVN's breach of the 2019 Agreement, in an amount according to proof at trial.

## COUNT V – NEGLIGENCE
### (As to LIVN)

63.     Olympusat hereby re-alleges and incorporates paragraphs 1 through 62 by reference as if set forth herein.

64.     As a party to the 2019 Agreement, LIVN had a duty to withhold itself from licensing or attempting to license any of the Programing Titles subject to the 2019 Agreement under the terms of the 2019 Exclusivity Provision.

65.     LIVN breached its duty by entering into or attempting to enter into a license agreement for the Program Titles with third parties, including, without limitation, Vubiquity, Inc., thereby, making the episode of the Program Titles available to other parties.

66.     Upon information and belief, LIVN claims that certain Program Titles, including, without limitation, those of Martial Universe, upon information and belief, have become publicly available, even though Olympusat owns and has paid for the exclusive license to the Program Titles, including the episodes of Martial Universe.

67.     Olympusat suffered harms, including, without limitation, loss of profits and fees for exclusive license under the 2019 Agreement, proximately caused by LIVN's negligence in breaching its duty owed to Olympusat who owned an exclusive license to the Program Titles, in an amount according to proof at trial.

## COUNT VI – FRAUD IN THE INDUCEMENT
### (As to LIVN)

68.     Olympusat hereby re-alleges and incorporates paragraphs 1 through 67 by reference as if set forth herein.

69.     LIVN and Olympusat were parties to the 2019 Agreement, which includes the 2019 Exclusivity Provision.

70.     During the negotiation and drafting of the 2019 Agreement, LIVN represented to Olympusat that it was granting an exclusive license to the Program Titles and agreed to the 2019 Exclusivity Provision to induce Olympusat to enter into the 2019 Agreement and pay the fees agreed to under the 2019 Agreement.

71.     However, LIVN did not have intention to grant an exclusive license to Olympusat and knowingly failed to disclose the fact that it planned to, and had a secret intention to, license

the Program Titles to other parties for its own benefits at the time of the signing of the 2019 Agreement.

72.     Olympusat did not know of LIVN's intention at the time and relied on the 2019 Exclusivity Provision that it was receiving an exclusive license to the Program Titles when it entered into the 2019 Agreement.

73.     If Olympusat had known that LIVN had a secret intention to license the Program Titles to other third parties, Olympusat would not have entered into the 2019 Agreement and/or pay the fees under the 2019 Agreement.

74.     Soon after and as early as August 2020, LIVN entered into or attempted to enter into a license agreement with third parties, including, without limitation, with Vubiquity, Inc. for 60 episodes of Martial Universe, thereby, upon information and belief, making the episodes of the Program Titles available to third parties.

75.     Olympusat suffered harms, including, without limitation, loss of profits, the fee paid to LIVN for the exclusive license, proximately caused by LIVN's fraudulent conduct and concealment, in an amount according to proof at trial.

76.     Olympusat is entitled to punitive damages for LIVN's fraudulent conduct, as it acted with disregard for Olympusat's right as it continued to intentionally deceive Olympusat while filing this instant lawsuit for damages.

**WHEREFORE,** by reason of the foregoing, Counterclaimants, OLYMPUSAT HOLDINGS, INC., a Florida corporation ("Olympusat Holdings"); OLYMPUSAT, LLC, a Florida limited liability company ("Olympusat LLC"); OLYMPUSAT, INC., a Florida corporation ("Olympusat, Inc."); and OCEAN NEW MEDIA, LLC, a Florida limited liability

company ("Ocean"),(collectively as "Olympusat") hereby respectfully requests the following relief:

1.      Entry of judgment in favor of Counterclaimants on each and every claim for relief;

2.      Awarding Counterclaimants all monetary damages available on each and every claim for relief, including punitive damages for the Sixth Counterclaim for Fraud in the Inducement;

3.      Awarding Counterclaimants their costs in this action; and

4.      Granting Counterclaimants such other further relief as this Court may deem just.

DATED this 29th day of March, 2024.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP.

By:     /s/ Jura C. Zibas
        Jura C. Zibas, Esq.
        Florida Bar No.:  124571
        2063 Main Street - Suite 100
        Sarasota, FL  34237
        Telephone:  941-866-8561
        Fax:          941-210-5979
        Jura.Zibas@wilsonelser.com
        Cheryl.Kujawski@wilsonelser.com

        Leia V. Leitner, Esq.
        Florida Bar No:  0105621
        111 N. Orange Avenue, Suite 1200
        Orlando, Florida 32801
        Telephone:  407-423-7287
        Fax:          407-648-1376
        Leia.leitner@wilsonelser.com
        Alejandra.Boscan@wilsonelser.com

        *Attorney for Defendants*
        *OLYMPUSAT HOLDINGS, INC., a Florida*
        *corporation; OLYMPUSAT, LLC, a Florida limited*
        *liability company; OLYMPUSAT, INC., a Florida*
        *corporation; THOMAS MOHLER, an individual;*
        *OCEAN NEW MEDIA, LLC, a Florida limited*
        *liability company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 29, 2024, I filed the foregoing document with the Clerk of the Court via CM/ECF and the CM/ECF system, which will send a notice of electronic filing to all counsel and parties of record.

Scott Alan Burroughs
California Bar 235718 (Pro Hac Vice)
Frank R. Trechsel
California Bar 312199 (Pro Hac Vice)
DONIGER / BURROUGHS PLC
603 Rose Avenue
Venice, California 90291
scott@donigerlawfirm.com
ftrechsel@donigerlawfirm.com

- *AND* -

Joel Benjamin Rothman
Florida Bar No. 98220
Craig Anthony Wirth
SRIPLAW, P.A.
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561-404-4350
Fax: 561-404-4353
craig.wirth@sriplaw.com
joel.rothman@sriplaw.com

*Attorney for Plaintiff*
*LIVN WORLDWIDE, TLD*

*/s/ Jura C. Zibas*
 Jura C. Zibas

295034130v.1